# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-cv-21215-DPG

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and STATE FARM
FIRE & CASUALTY COMPANY,

Plaintiffs,
      vs.

FIRST CARE SOLUTION, INC.; NOEL RUIZ;
YORYANA BALBUENA a/k/a YORYANA
HERNANDEZ; MARCOS PADRON AND THE
KING OF BILLING AND COLLECTION LLC d/b/a
INSURANCE RESOLUTION SERVICES, INC.

Defendants.
_____/

## AFFIDAVIT OF YORYANA HERNANDEZ

STATE OF FLORIDA        )
                                      )
COUNTY OF MIAMI-DADE  )

    BEFORE ME, the undersigned authority personally appeared Yoryana Hernandez, who being by me first, duly sworn, deposed and said:

    1)    My name is Yoryana Hernandez. I am also known as Yoryana Balbuena and Yoryana Ruiz-Hernandez. I am over the age of eighteen (18) years old, am competent to testify, and have personal knowledge of the facts contained in this Affidavit.

    2)    I moved to Miami from Cuba on December 3, 2004 for a better life. When I came to the United States, I worked as a waitress and then as a cashier at a supermarket where I met

1

Caridad Triana, who was opening a massage therapy school called Professional Hands Institute with Noel Ruiz.

3) I met Noel Ruiz around May 2005, shortly after Professional Hands Institute opened. Professional Hands Institute is owned by Caridad Triana and Noel Ruiz.

4) I went to school for massage therapy at Professional Hands Institute from June 2005 until November 2005 when I obtained my diploma.

5) While attending school, I also worked at Professional Hands Institute handling records and admissions.

6) I received my Massage Therapist license (MA48569) from the Florida Department of Health on October 30, 2006.

7) I worked at Professional Hands Institute from June 2005 until December 2006.

8) In early 2007, Noel Ruiz told me that he was going to open a clinic and that if I put my license there as the owner, he would take care of everything else. Noel and I met one time for about 20 minutes about the creation of First Care. I did not research the laws for opening a clinic and did not consult a lawyer or an accountant. I thought that this was how a clinic was opened.

9) Noel and I never discussed how First Care would get patients.

10) Noel chose the location for First Care in a building that he owned.

11) I had no written agreement with Noel related to First Care. I understood that I would be listed as the owner of First Care and would be paid $400 per week as a massage therapist treating patients. At some point, I told Noel that I needed him to pay me a little more and he increased my pay to $450 per week. I had no other jobs at First Care other than providing therapy to patients. Noel did not want me to do anything else related to First Care.

12) I did not have a key to First Care when it opened.

13) Noel hired the employees for First Care. I had no authority to hire or fire anyone. Noel also handled all of the scheduling and found all the equipment.

14) First Care only treated automobile insurance accident patients and only accepted automobile insurance. It did not accept health insurance, Medicare, Medicaid, or cash. This policy was set by Noel Ruiz.

15) Noel determined the charges for the services provided at First Care, was responsible for making sure all the bills were sent out, and handled all payments received.

16) Noel chose the accountant for First Care. I never met with the accountant.

17) Noel decided where to open the bank account for First Care and made all bank deposits. I did not review nor have access to First Care's financial records. Noel was in control of the checkbook.

18) Noel hired the lawyer for First Care, who I believe was Gonzalez. I had nothing to do with the lawyers or the handling of the cases. I made no decisions regarding whether to file or settle First Care lawsuits. All of these decisions were made by Noel. My only involvement in First Care's litigation was when I was deposed as a massage therapist on 2-3 occasions.

19) First Care opened around May/June 2007. In December 2007, I told Noel that I did not want to be the owner of First Care anymore because the only involvement I had was as a massage therapist. He said that he was going to look for a different owner, which is when he brought in Dr. Romano. He told me that Dr. Romano would be the new owner and that I would continue on as a massage therapist.

20) Noel and I never discussed how much I would sell First Care to Dr. Romano for and I never met with Dr. Romano regarding the sale. Noel just told me that Dr. Romano was the new doctor and owner.

21) I do not recognize the Statement of Understanding attached to this Affidavit as Exhibit "A" and the signature on the Statement of Understanding is not mine. I do not sign with the name Balbuena, only with my married name, Hernandez. I never signed any documents related to the sale of First Care to Dr. Romano.

22) After Dr. Romano started at First Care, Noel continued to control all aspects of First Care. Nothing changed about the operation of First Care.

23) While I worked at First Care, there was no renovation, construction work, painting, or work done on the floors of the First Care suite.

24) While I worked at First Care, I did not know of any business that First Care did with Best Transportation or any services provided by Best Transportation to First Care.

25) I met Marcus Padron for the first time when he came to First Care with Dr. Romano as his interpreter. Marcus Padron also studied at Professional Hands in 2009/2010, which is the last time I saw him.

26) I stopped working at First Care in February/March 2009 and went back to work at Professional Hands, where I still work now.

27) The signature on the check from First Care to me dated April 13, 2010 for the amount of $29,426.78, attached to this Affidavit as Exhibit "B," looks like my signature. I did not work at First Care on April 13, 2010. Noel asked me to close out the First Care Bank of America account since my name was on the account. We went to the bank together and wrote

4

the check to me closing out the First Care account. The bank gave us the cash and I gave it to Noel because it was his.

28) I still see Noel at Professional Hands, where I currently work handling financial aid; however, I barely talk to him.

29) I called Noel when I received the subpoena in this case to ask him what happened with the clinic and how I should respond to the subpoena. However, he was no help.

30) I understand now that First Care was not my business. It was under my name, but I knew nothing about it other than providing massage therapy. I never actually owned First Care. At all times, it was owned by Noel Ruiz.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Yoryana Hernandez

The foregoing instrument was sworn to and subscribed before me this 6th day of June, 2016, by **YORYANA HERNANDEZ**, who is:

☐ personally known to me; or

☒ produced a driver's license issued by the ___FDL___ Department of Highway Safety and Motor Vehicles as identification; or

☐ produced the following identification: _____

LAZARO J LOPEZ
MY COMMISSION #FF028836
EXPIRES June 23, 2017
(407) 398-0153   FloridaNotaryService.com

_____
NOTARY PUBLIC, STATE OF FLORIDA

_____
(Print, Type or Stamp Commissioned Name of Notary Public)

5

March 12, 2008

# Statement of Understanding

First Care Solution, Inc.
2128 Flagler Street #103
Miami, Florida 33135

With reference to the latest Florida Statutes, Chapter 460 Board of Chiropractic Medicine to wit "Any lease agreement, rental agreement, or other arrangement between a person other than a licensed chiropractic physician and a chiropractic physician whereby the person other than a licensed chiropractic physician provides the chiropractic physician with chiropractic equipment or chiropractic materials shall contain a provision whereby the chiropractic physician expressly maintains complete care, custody, and control of the equipment or practice."

In compliance with the above Florida Statute section, I hereby indicate that any and all transfers to John Romano, D.C. have been made. If further paperwork or acknowledgement is required by me or anyone associated or in control of any equipment, rental agreements, or arrangements, I agree to transfer any control and/or ownership to John Romano, D.C. as required by each and every individual entity.

I further attest that I, nor anyone in the office maintain any control in reference to the selection of a course of treatment for a patient, the procedures or materials to be used as part of such course of treatment, and the manner in which such course of treatment is carried out by Dr. Romano.

I attest Dr. Romano has complete control over patient records, policies and decisions relating to pricing, credit, refunds, warranties, advertising, decisions relating to office personnel and hours of practice.

This Statement of Understanding applies to any and all contracts and/or agreements entered into or renewed on or after July 1, 2008.

_____    3/12/08
Authorized Signature                Date

YO RYANN BARBURY
Printed Name

ROMANO-CDF 000197



| Item Date | Sequence Number | State Code | Account Number | Routing Number | Amount |
|---|---|---|---|---|---|
| 4/13/2010 | 7250513783 | FL | REDACTED 4995 | 6310027 | $29,426.78 |

| Serial Number | Image Indicator | Sorry Indicator | Customer Data | Payee Name | User Field 1 |
|---|---|---|---|---|---|
| 2280 | 1 | 0 | | | |

| User Field 2 | ImgVolNo |
|---|---|
| | 1 |